

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| v. | Action No. 3:08-CR-365 |
| RASHAD HARRIS, | |
| Defendant. | |

### MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Suppress filed by Defendant, Rashad Grant Harris (Docket No. 13). For the reasons stated below, Defendant's Motion is hereby DENIED.

### I. BACKGROUND

On May 11, 2008, Richmond City Police Officers Aeschlimann and Rice were on patrol on 31st Street in South side Richmond. They observed a white Lexus pull out onto the street from 17 East 31st Street and park immediately on the opposite side of the street about five or six houses down, neither time using the turn signal. The officers recognized the car because they had observed Mr. Harris sitting in the same vehicle a few days before, on May 1, 2008. At that time, the officers had informed Harris, after checking his driving record, that he was a suspended driver and should not be driving. Officer Aeschlimann also recognized Harris from a March 8, 2008 arrest, wherein Harris was arrested for possession of controlled substances.

Officer Rice pulled up to the parked car in order to identify the driver. Once alongside the vehicle, the officers recognized Harris in the driver's seat. Because they were familiar with Harris and his background, the officers activated their emergency equipment and Aeschlimann exited the police cruiser and approached Harris' vehicle. Officer Aeschlimann spoke to Harris while Officer Rice ran the license plate number and reported the stop to police dispatch. Aeschlimann spoke with Harris then turned away to speak with Rice who had confirmed that Harris was a suspended driver. As Aeschlimann turned back around to speak with Harris, he noticed Harris quickly putting something in his mouth and then grab a Wendy's cup to take a drink. Aeschlimann noticed that Harris appeared to be struggling to swallow the object in his mouth. Harris testified that he told the police he had taken a Tylenol for his headache. Aeschlimann testified that based on his experience, training, prior involvement with Harris, and his knowledge of the behaviors of drug traffickers, he believed that Harris was attempting to swallow an illegal controlled substance in order to conceal it from the police. Harris was then removed from the vehicle, placed in handcuffs, and put in custodial detention. Aeschlimann intended at that time to make a custodial arrest for driving suspended, so he patted down Harris for weapons.

Aeschlimann returned to the police cruiser to check Harris' record, and Rice stayed with Harris. Officer Rice noticed a cell phone in Harris' right hand; she removed it and placed it inside the vehicle. Officer Rice then noticed the end of a plastic baggie with a white chunky substance inside sticking out of the bottom of the Harris' clenched fist. Rice told Harris to give her the bag, but he denied having

anything in his hand. A struggle ensued and Harris was taken to the ground, wherein Harris attempted to wrestle himself away from the officers. After the officers were able to successfully detain Harris, he was arrested and the officers recovered a large bag with off-white rocks from Harris' right hand and $1,655 in his right front pants pocket. Upon subsequent search of the vehicle, the officers discovered an empty prescription bottle with the label torn off and a knotted plastic bag corner containing yellow gel, believed to be Tussionex.

Officer Aeschlimann took Harris before the magistrate to determine probable cause and obtain a warrant. The officers had not yet read Harris his Miranda rights. While Harris was before the magistrate, the magistrate asked Harris if he had anything to say and Harris responded by saying that someone else had left the cocaine in his car and he only noticed it when the police stopped him. He said he was going to give it to the police so they could take care of it. There is no evidence that Harris was coerced to speak to anyone. Further, Harris' statement was made in response to the magistrate's question, not any interrogation by the police.

Harris' Motion asserts that the evidence seized on May 11, 2008, was incident to an illegal search and seizure, and the statements made to the magistrate were improperly elicited because he was never given proper Miranda warnings.

## II. ANALYSIS

### A. Reasonable suspicion existed to stop the vehicle

The Fourth Amendment safeguards the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment applies to searches in one's home, as well as in their automobile. Whren v. United States, 517 U.S. 806, 809–10 (1996). A police officer may conduct an investigatory detention or seizure, commonly referred to as a Terry stop, without violating the Fourth Amendment when the officer possesses "a reasonable and articulable suspicion" that criminal activity is afoot. United States v. Smith, 396 F.3d 579, 583 (4th Cir. 2005); see Terry v. Ohio, 392 U.S. 1, 30 (1968); United States v. Reaves, 512 F.3d 123, 126 (4th Cir. 2008). Where the police have probable cause to believe a traffic law has been violated, sufficient reasonable suspicion exists to conduct a stop on a vehicle. Whren, 517 U.S. at 819. Once a proper stop has been conducted based on a traffic violation, a police officer may ask the driver to exit the vehicle without exceeding the bounds of the Fourth Amendment. Ohio v. Robinette, 519 U.S. 33, 38–39 (1996) (citing Pennsylvania v. Mimms, 434 U.S. 106, 111, n.6 (1977)).

Whether the facts give rise to a reasonable and articulable suspicion must be judged objectively, i.e., whether a "man of reasonable caution" in the shoes of the police officer, given the facts, would believe the investigatory detention was appropriate. Terry, 392 U.S. at 20. Although reasonable suspicion is a less demanding standard than probable cause, "[t]he officer . . . must be able to articulate

4

something more than an inchoate and unparticularized suspicion or hunch." United States v. Sokolow, 490 U.S. 1, 7 (1989). To determine whether an officer had a reasonable suspicion of criminal activity, courts assess the totality of the circumstances surrounding the seizure. Id. at 8. There are numerous relevant facts that may be considered, including, and most relevant here, the experience of the officer. See United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993) (noting that the "practical experience of the officers" is a factor that may raise the level of suspicion).

An arrest is deemed constitutionally reasonable if "an officer has probable cause to believe a person committed even a minor crime in his presence." Virginia v. Moore, 128 S. Ct. 1598, 1604, 1607 (2008). Further, a search incident to an arrest is reasonable under the Fourth Amendment. Id. at 1608; United States v. Han, 74 F.3d 537, 541 (4th Cir. 1996).

In the present case, Harris was driving on a suspended license, and the police were aware of Harris' status as a suspended driver when they saw him driving on May 11, 2008. Driving on a suspended license is a class 1 misdemeanor under Virginia law, punishable by up to twelve months' imprisonment. See Va. Code Ann. § 46.2-301 (2008). When the officers pulled Harris over, they had reasonable suspicion that a crime had occurred or was occurring. Furthermore, they had probable cause to believe Harris was violating the law. For this reason, the officers were legally permitted to arrest Harris immediately after they verified his suspended driving status. Therefore, this Court finds that there is no question that reasonable suspicion existed to lawfully stop and seize Harris.

Furthermore, Harris' actions only gave further justification for the stop and arrest. His movement toward the cup and his mouth gave rise to reasonable suspicion that he was trying to ingest drugs to conceal them from the police. This behavior, and Aeschlimann's knowledge and experience with the drug trade, justified removing Harris from the vehicle and placing him into investigative custody. Lastly, Rice's observance of the bag of crack cocaine in Harris' right hand only added to the totality of the circumstances explaining the arrest.

For these reasons, the stop, subsequent arrest, and search of Harris were proper and Defendant's Motion requesting the suppression of the evidence will be DENIED.

B. Defendant's Miranda rights were not violated

Defendant also asserts that his right against self-incrimination under Miranda was violated when the police officers failed to issue him his Miranda warnings and proceeded to ask him questions.

The United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. A person in custody must be advised of that right before he is questioned by a law enforcement officer. Miranda v. Arizona, 384 U.S. 436, 467 (1966). A person is in custody if he has been arrested or, given the circumstances, his freedom is restricted to an extent that a reasonable person would feel that he is in custody. Id. at 444; accord Stansbury v. California, 511 U.S. 318, 322 (1994); United States v. Sullivan, 138

F.3d 126, 130 (4th Cir. 1998). However, it is not necessary to give a Miranda warning before conducting a Terry stop. Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt County, 542 U.S. 177, 187 (2004).

If a person is not advised of his rights, as provided in Miranda, and subsequently makes a statement, the statement must be presumed to be compelled, and consequently may not be introduced by the prosecution in its case-in-chief. See Oregon v. Elstad, 470 U.S. 298, 306–07 (1985). However, if the prosecution demonstrates that the statement was voluntary, overcoming that presumption, the evidence may be admitted. Id. at 306.

A response to a question that was not intended to elicit any evidence that could be used against a suspect is not incriminating, Murphy v. Holland, 845 F.2d 83, 86 (4th Cir. 1988)—even if the statement turns out to be so, United States v. Taylor, 799 F.2d 126, 128 (4th Cir. 1986).[1] Thus, the Fourth Circuit has held that asking for "basic personal information"—for example, a suspect's "name, age, and place of birth"—is "incident to arrest," does not constitute interrogation, and does not violate Miranda. Taylor, 799 F.2d 128. As long as the officers do not have a "reasonable expectation that their questions would [ ] likely [ ] elicit [incriminating] information" the statement should not be suppressed if given outside Miranda. United States v. Excell, 953 F.2d 640, *2 (Table) (4th Cir. 1992) (unpublished) (citing Taylor, 799 F.2d at 128).

---

[1] In Taylor, the Fourth Circuit held that ordinarily, a "request for identifying information, however phrased, is inherently ministerial;" however, the context of the court's remark suggests that the court was referring to questions asked during "booking procedures," not an interrogation. 799 F.2d at 128.

In this case, it is true that Harris was not read his <u>Miranda</u> rights before being brought before the magistrate and it is clear he was in custody. However, the evidence is clear that Harris was not asked any questions by the police; he was asked by the magistrate if he wanted to say anything during the probable cause hearing. Under the circumstances, it appears that this question was not asked by the magistrate in order to elicit incriminating information from Harris, even though the answer was incriminating. For this reason, there was no custodial interrogation triggering <u>Miranda</u>. Therefore, Harris' claim that his <u>Miranda</u> rights were violated fails and the Motion to suppress the statements will be DENIED.

### III. CONCLUSION

For the reasons stated above, the Motion to suppress the evidence and statements will be DENIED.

Let the Clerk send a copy of this Memorandum Opinion to counsel of record.

IT IS SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this 6th day of January 2009